JACK C. GALLOWAY v. STATE OF NEBRASKA.

FILED FEBRUARY 15, 1911. No. 16,933.

1. Criminal Law: ASSISTANT PROSECUTOR. Where it appears that the fact that additional counsel was to assist the county attorney was known to counsel for the accused from and before the time of the beginning of the trial, and before any jurors were impaneled, and no prejudice is shown to have occurred to the rights of the accused, an objection to the appearance of such additional counsel was properly overruled.

2. ———: IMMATERIAL EVIDENCE. Ordinarily a judgment will not be reversed on account of the admission of immaterial evidence unless some prejudice has resulted to the accused, and this is especially true where other evidence of the same transactions is received without objection.

3. Rape: INSTRUCTIONS. An instruction should respond to the issue before the court, and where the accused is charged with rape on a child under 15 years of age it is not error to refuse an instruction which is applicable alone to a charge of rape upon a child over 15 and under 18 years of age.

ERROR to the district court for Saline county: LESLIE G. HURD, JUDGE. *Affirmed.*

*Bartos & Bartos,* for plaintiff in error.

*Arthur F. Mullen, Attorney General,* and *George W. Ayres, contra.*

LETTON, J.

Plaintiff in error brings these proceedings to review a judgment of conviction of rape upon a female child under the age of 15 years. A number of errors are assigned which will be examined, but in different order from that in which presented.

In making his statement to the jury, something was said by counsel for the accused which was objected to by Mr. G. N. Venrick. Defendant's counsel then objected to the appearance of Mr. Venrick in the case, for the reason . that Venrick was not the county attorney nor a deputy county attorney, nor appointed by the court in the case. The objection was overruled and exception taken. It is now contended that this ruling was erroneous. At the hearing upon the motion for a new trial, a showing was made by the state to the effect that Mr. Venrick is a young lawyer who had been associated with the county attorney in his office and in the trial of criminal cases for about nine months at the time of the trial; that counsel for defendant had during all that time known these facts; that Venrick had appeared as counsel in this case from the time the case was called and before any jurymen were called into the box, and the fact that Venrick was to appear with the affiant was known to defendant's counsel before and ever since he had been appointed to defend. This court has carefully preserved the rights of the accused in such matters even to the extent of saying that assistant counsel should be selected and appointed for the prosecution before the trial, so that the defendant may in all fair-

ness be permitted to examine the panel of jurors with reference to the fact that such counsel is to be employed. *Knights v. State,* 58 Neb. 225. No request was made to be allowed to re-examine the jurors, and the circumstances shown by the record in this case neither show any prejudice to the defendant nor indicate that any error was made in overruling the defendant's objection.

It is next complained that the court erred in permitting testimony to be given with respect to what was done by the wife of the accused and Mina McKenzie, the sister of the complaining witness, at a time when both the accused and the prosecuting witness were absent. In order to understand this point it will be necessary briefly to state the facts in the case. On the 22d of April, 1909, an advertisement appeared in the Nebraska State Journal of Lincoln, Nebraska, as follows: "Wanted, Girl to work with man and wife in vaudeville; reference unnecessary; $5.00 per week and all expenses; 209 North 9th St. Suite 1." This advertisement attracted the attention of the prosecuting witness, Grace McKenzie, who answered it and applied in person at the place specified. The accused and his wife were at the room, which was in a lodging house. After some conversation at that place, several other meetings were had with the prosecuting witness, both there and in the presence of her mother at the rooms where the mother and children lived. The family was poor, and consisted of the mother, two daughters, Mina, who was 16 years of age, and Grace, who would be 15 years old on September 1, 1909, and a son about 7 or 8 years old. The older girl worked in the daytime in a restaurant at University Place, a suburb of Lincoln, and the mother also worked out by the day. After some conversation with the mother, she assented to Grace going with the accused and his wife, provided the older sister Mina was also employed. An agreement was finally made by which Mina was employed at $5 a week and expenses, ostensibly to sing and dance in vaudeville houses in different towns, and Grace was to go with them for three weeks for her clothes and

32

expenses, and after that was to be paid at the same rate if she proved satisfactory. It was also arranged that Mrs. Galloway and Mina should go to Fremont to visit a friend of Mrs. Galloway's and that the accused and Grace should go to Omaha to procure some stage dresses, and from there should proceed to Fremont to meet the others. Up to this point there appears to be no dispute in the testimony. On the evening of April 23 the girls with Mr. and Mrs. Galloway and a man called Brown, who seemed to be associated with the accused, went to the Burlington station in Lincoln together. Brown, Mrs. Galloway, and Mina left on a train, and Galloway and Grace took another train which departed shortly afterward. Grace testifies she believed that the others had gone to Fremont, and that she and Galloway were taking a train to Omaha. After their train had passed two or three stations and reached the little station of Burks, in Saline county, she says the accused told her it was necessary to leave the train there and to walk across to another station in order to take another train for Omaha; that they left the train, walked some distance along the railroad track, and then along a wagon road to a secluded spot on the banks of a creek, where the accused feloniously assaulted her. She testified that they then walked several miles into the town of Crete, where the accused took her to a hotel, procured a room and registered for her; that he then left her, saying that he was going to look for the other girls; that she stayed at the hotel that night alone, and the next morning the accused returned and took her to another hotel, where she found the remainder of the party. After breakfast that morning the two men procured some fishing tackle, some lunch and a number of bottles of beer, and the whole party spent the day fishing in the river a short distance from the town. That night Mrs. Galloway, Brown, and Grace took the train to Wilber, leaving Mina and the accused at Crete. When they reached Wilber, Mrs. Galloway went to the hotel with Grace, registered for her under an assumed name, paid for the room with money which she had ob-

tained from the girl, and left her at the hotel. The next
morning complaint was made by Grace to the wife of the
hotel keeper as to her treatment by the accused, and he was
arrested near Wilber later in the day.

It is the admission of the testimony of Mina McKenzie
describing the movements of Mrs. Galloway and herself
after they reached Crete which is assigned as being pre-
judicially erroneous. This testimony was to the effect that
the witness believed they were going to Fremont until Mrs.
Galloway suggested that they get off at Crete, and that
after they reached there Mrs. Galloway went to a hotel and
procured a place for the witness to stay; that the next day
when they were all together at the fishing picnic, whenever
the sisters would approach each other, Mrs. Galloway
would come up and interrupt them and begin to talk about
rehearsals, and that afterward the party again separated,
as was testified to by Grace. The theory of the state evi-
dently was that both the accused and his wife had knowl-
edge of the criminal act; that the reason that Grace made
no complaint the next day was that Mrs. Galloway pur-
posely prevented her from communicating with her sister;
and that the evidence was material as explaining her fail-
ure to complain. It is shown, however, that Grace had op-
portunity to complain to others at the hotel in the absence
of both the accused and his wife, and we are not inclined to
place much stress upon this suggestion. There were
other doings of the party at Crete admitted in evidence,
but none showing any criminal act of any kind. It is
true that evidence of another crime would not be admis-
sible and might be prejudicial under the issues framed, but
the evidence objected to falls far short of showing any
connection with any other offense. Moreover, much evi-
dence along this line was received without objection, and
the accused and his wife told practically the same story as
to the doings of the party at Crete. The defendant insists
that this was evidence of a conspiracy and that no con-
spiracy was charged, but, as we have seen, the evidence
fails to show anything more than a concert of action be-
tween the defendant and his wife at the very most.

The jury were entitled to know what the circumstances were as to the making or failure to make complaint, and it would have been difficult to do so without showing what was done by the party after they reached Crete. The facts shown as to no complaint being made and of the friendly terms which seemed to exist were evidence in favor of the accused rather than against him, and while perhaps not very material we cannot see wherein the defendant suffered any prejudice by the admission of this testimony.

Defendant complains of the refusal of the court to give instruction No. 6 tendered by him, which instructed the jury that if they believed Grace McKenzie to be over 15 years of age and under 18 and unchaste, or if they entertained a reasonable doubt as to her chastity, they should acquit unless they believed she was under 15. The accused was charged with an assault on a child under 15 years of age, and the court instructed on its own motion that in order to convict the jury must be satisfied beyond a reasonable doubt that the complaining witness was a female child under that age. The instruction tendered did not respond to the issue before the jury and was properly refused, and the instruction given was as favorable to the accused as the charge warranted.

Error is also assigned as to the overruling of defendant's challenge to the juror Jacobec. We think this juror was competent, and the challenge was properly overruled.

It is also complained that the evidence does not support the verdict. We are of opinion that the story of the complaining witness is sufficiently corroborated and the evidence ample to sustain the conviction.

It is also complained that the sentence imposed is excessive. The maximum punishment was inflicted, and while the penalty seems severe, under all the circumstances in the case, we are not prepared to say that it is so excessive as to warrant us in interfering with the discretion of the trial court.

We find no prejudicial error in the proceedings of the district court, and its judgment is

AFFIRMED.