## J. E. W. WILLIAMS v. STATE.

No. A-3570—Opinion Filed Nov. 22, 1920.

(193 Pac. 432.)

(Syllabus.)

1.  **APPEAL AND ERROR—Power to Reduce Sentence.** Under Code of Criminal Procedure (section 6003, Rev. Laws 1910), this court, in the furtherance of justice, has the power to modify any judgment appealed from by reducing the sentence.

2.  **INTOXICATING LIQUORS—Unlawful Conveyance—Reduction of Penalty.** In a prosecution for unlawfully conveying intoxicating liquor, the evidence considered, and held sufficient to warrant a verdict of guilty as charged, but insufficient under the facts and circumstances of the case to support a verdict assessing the maximum penalty, and the judgment and sentence is modified to 30 days' confinement and a fine of $100.

*Appeal from County Court, McIntosh County;*
*Horace B. Reubelt, Judge.*

J. E. W. Williams was convicted of a violation of the prohibitory liquor law and he appeals. Affirmed, as modified.

*C. H. Tully,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall* and *E. L. Fulton,* Asst. Attys. Gen., for the State.

DOYLE, P. J.   This appeal is from a judgment of conviction for unlawfully conveying intoxicating liquor, the punishment having been assessed at imprisonment for 6 months in the county jail and a fine of $500. The information in substance charged that in McIntosh county, on or about the 14th day of November, 1918, J. E. W. Williams, did unlawfully convey 12 quarts of whisky from the Mis-

ısouri, Kansas & Texas Railway depot in Eufaula to the room in the rear of the Colored Methodist Church in Eufaula. For the state, T. J. Duncan, deputy sheriff, testified:

"I was at the depot, and saw the defendant get off the train. He went towards the Colored Church, and was carrying a leather grip. Deputy Sheriff Waddle was there, and we followed and caught up with him. I told him we had been informed that he was bringing in whisky, and asked him if he had any. He said he would not allow whisky about him at all, much less bring it in with him to his home. We went on together to the church. There we had quite a little conversation. He said he was a minister of the gospel, and was telling us the reason he would not dabble with whisky, and that everybody knew that he would not do anything like that. I said that nothing would do me but to see the inside of the grip. He said: 'All right; wait a minute; what is the least penalty for a case of this kind?' I told him I didn't know exactly, but thirty-fifty may be. He opened the grip, and it contained 12 quarts of whisky in bottles. Mr. Waddle carried the grip, and with the defendant we proceeded to the county jail."

The testimony of Deputy Sheriff Waddle was in substance the same. Both witnesses identified a quart bottle of whisky and it was introduced as evidence, and both testified that they did not know what disposition was made of the other eleven bottles. The state rested, and the defendant moved the court to direct a verdict of acquittal, which was overruled.

The defendant as a witness in his own behalf testified:

"I am a minister, and have been for 45 years. I have lived in Oklahoma 26 years. As I was leaving Eufaula on the 12th, Sheriff Waddle came to me and said he had a replevin for our piano. He asked me when I would be back, and I said, 'Wednesday or Thursday morning.' I went up to Vinita, and saw Congressman Davenport on some busi-

ness.  He said he would turn the business over to Congressman Chandler.  I came back to Muskogee, and stayed at the undertaking establishment that night.  The next morning I was at the depot to take the train, and was conversing with Mr. Austin and Mr. Wiggins.  A man came up and asked 'Is this Rev. Williams, of Eufaula?' I said, 'Yes; but theer are two Rev. Williams there.'  He asked if I was the one that was pastor of the Methodist Church.  I said, 'Yes.'  He said, 'I want you to do me a favor.'  I said, 'That depends upon what it is.'  He said, 'I want you to carry this suit case down there.'  I said, 'All right;' and he said there would be some one there to take the suit case from me.  Arriving here, I looked out and saw the officer.  I was sure he came down to replevin the piano. On the way from the train the officers asked me about the grip.  I told them I did not know what was in it.  When they opened it and found it was whisky I was hurt so bad I did ask them what was the penalty.  I told them I did not know it was whisky; that there is not a man in the 26 years I have been here who knows any wrong against me about whisky or any other thing.  I have been trying to get Mr. Ledbetter to locate the man who gave it to me; I understand that on account of my labor on the Council of Defense it was done to get even with me."

The first question in the case is whether or not the evidence is legally sufficient to sustain a conviction.

The credibility of the witnesses and the weight to be accorded their testimony were questions for the jury to determine, and we are of opinion that the verdict, in so far as it responds to the issue of guilty or not guilty, is sustained by the evidence.

One of the grounds of the motion for new trial and assigned as error is: "That the maximum punishment assessed by the jury in their verdict is excessive, and ap-

pears to have been the result of passion and prejudice."

Our Code of Criminal Procedure provides:

"The appellate court may reverse, affirm, or modify the judgment appealed from." Sec. 6003, Rev. Laws.)

It seems to have been the intention of the Legislature to vest this court with power to modify any judgment appealed from by reducing the sentence when such a course would be in furtherance of justice and conduce to the humane administration of the law. However, this power should not be exercised unless it is apparent that injustice has been done. *Hall* v. *State,* 7 Okla. Cr. 126, 122 Pac. 729; *Fritz v. State,* 8 Okla. Cr. 342, 128 Pac. 170; *Johnson v. State,* 12 Okla. Cr. 260, 154 Pac. 1004; *Anthony v. State,* 13 Okla. Cr. 125, 163 Pac. 548; *Westbrook v. State,* 14 Okla. Cr. 423, 172 Pac. 464; *Chambers v. State,* 16 Okla. Cr. 238, 182 Pac. 714.

The record in this case cannot be read with fairness and justice to all and avoid the conclusion that, although the evidence is sufficient to sustain the conviction, yet the punishment assessed is out of proportion to the offense proven, and is unduly extreme and excessive.

For this reason the judgment of the lower court will be modified to the extent that the sentence of six months' imprisonment and a fine of $500 will be changed to confinement in the county jail for 30 days and a fine of $100. This fine, if not paid, to be satisfied as by law provided, and, as thus modified, the judgment is affirmed.

ARMSTRONG and MATSON, JJ., concur.